IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

YOUA VUE,

    Defendant.

Criminal No. 09-0048
**ELECTRONICALLY FILED**

**MEMORANDUM ORDER**
**Motion to Produce Evidence that the Government Intends to Use Pursuant to Federal Rules of Evidence 404(b) and 609 [doc no. 50]; Defendant's Motion to Suppress Evidence or, in the Alternative, Hold a *Franks* Hearing [doc. no. 51]; Defendant's Motion to Suppress Statements [doc. no. 52]; Defendant's Motion to Reveal Identity of Confidential Informant [doc. no. 53]; and Second Motion to Withdraw as Attorney [doc. no. 68]**[1]

**I. Background**

The Government brings this case against defendant, charging him with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §922 (g). This firearm was seized by the authorities pursuant to a search warrant for the defendant's home issued to Detective Thomas Gault.

The search warrant was issued based upon an affidavit of probable cause prepared by Detective Gault. Doc. no. 61. In the affidavit, the detective explained that within 48 hours a "proven reliable" confidential informant (CI) told the detective that he had observed a sawed-off shotgun with filed-off serial numbers and several other firearms inside defendant's home. *Id.* The CI also told the detective that defendant had been convicted of firearms violations in the past, specifically for making

---

[1] In addition to addressing said defendant's motions, this Memorandum Order will also address defendant's Sealed Motion (doc. no. 64).

silencers, and had served time in a federal penitentiary for doing so. *Id*. The CI also informed the detective that defendant bragged about making explosives and talked about starting a marijuana grow house. *Id*. The CI reported that he had seen equipment used for growing marijuana in the house. *Id*. The detective indicated the CI was knowledgeable of firearms and controlled substances from past possession or use. *Id*. He further indicated that the CI was reliable because he had provided information within the past several months that led to the arrest of four separate individuals and the seizure of drugs and a firearm. *Id*.

The information provided by the CI was confirmed by the detective. *Id*. For example, the detective confirmed defendant had been incarcerated in a federal penitentiary and also confirmed, by personal observation, that defendant resided at the place where the CI had seen the firearms.[2] *Id*. As a result, the detective clearly understood that defendant was prohibited from possessing any firearms. *Id*.

After the search warrant was executed, police officers confiscated various items including ammunition, several firearms and equipment used to grow plants. Defendant and two other individuals were arrested at that time. On February 13, 2009, defendant appeared before United States Magistrate Judge Lenihan, an unsecured appearance bond was set, and defendant was released but was restricted to travel within Western District of Pennsylvania and placed on home detention. Doc. nos. 9-11. The arraignment, originally scheduled for February 18, 2009, was continued to March 20, 2009, at the request of defendant's counsel[3] because defendant had checked into an in-

---

[2] Defendant had been convicted in federal court in Minnesota in 1998 for unlawfully conspiring to manufacture firearms (*i.e.* silencers). Doc. no. 63, p. 2.

[3] Counsel who made this request is the same as defendant's current trial counsel. Doc. no. 14.

patient rehabilitation facility. Doc. no. 14. On March 4, 2009, the probation officer filed a petition indicating that defendant had not cooperated while at the rehabilitation facility and was discharged by the facility on March 3, 2009. Doc. nos. 16, 18. Defendant failed to report to his probation officer and failed to return home to be placed on home detention under electronic surveillance. *Id*. Finding that defendant had absconded, this Court issued a warrant for his arrest on March 6, 2009. Doc. no. 17.

Defendant was missing for nearly two months and when he was finally apprehended in Pittsburgh, he was wearing a wristband from a hospital in Detroit, Michigan with his brother's name – not his own – on it. See doc. no. 63, pp. 2-3. While being transported to the United States Courthouse, defendant told the Deputy United States Marshal that the fugitive task force officers had not given him sufficient time to get his "AK" (meaning his AK-47) and said that he has "guns all over the place." *Id*. After appearing before United States Magistrate Judge Mitchell on May 11, 2009 (doc. no. 25), this Court held a bond revocation hearing on May 21, 2009, and ordered that defendant be detained until trial, and remanded defendant into federal custody. Doc. nos. 20-22.

## II. Defense Counsel's Nine Motions for Extension of Time

On June 25, 2009, this Court granted defense counsel their first extension of time "to complete the investigation of the facts and law" concerning this matter. Doc. no. 29, ¶3. After this first continuance was granted, defendant's counsel requested, and this Court granted, seven additional extensions "to complete the investigation of the facts and law". Doc. nos. 31, 33, 35, 37, 39, 41, and 43, all at ¶3.

On June 10, 2010, when Defendant's counsel made their ninth request for an extension of time to complete the investigation, this Court denied the request. Notably, defendant had been

3

incarcerated during this year-long extension process.[4]

## III. Defendant's Motions

### A. Defendant's Motion to Suppress Statements (doc. no. 52)

In his Motion to Suppress Statements (doc. no. 52) defendant moves to suppress certain statements allegedly obtained from him on July 30, 2008, February 13, 2009, and May 13, 2009, on the grounds that those statements were obtained in violation of Mr. Vue's rights guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. After careful consideration of the motion and the government's response thereto (doc. no. 62), it appears that resolution of the issues regarding Mr. Vue's various statements will require the Court to make factual findings and credibility determinations.

For instance, there seems to be no dispute that on February 13, 2009, Detective Edward Green, a task force officer with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), arrested defendant on a federal warrant; had a conversation with Mr. Vue about, among other things, his possession of firearms; that this conversation occurred after Detective Green had administered standard Miranda warnings and defendant had signed a Miranda waiver form, see Exhibit A to United States Response to Motion to Suppress Statements (doc. no. 62-1); and that during the conversation, defendant indicated that he wanted to speak with an attorney. The dispute is whether Mr. Vue unambiguously invoked his right to counsel and, if so, whether he thereafter initiated further

---

[4] Although defendant had been released subsequent to his arrest on the firearm charge, this Court found that he violated the conditions of his pretrial release by: (1) leaving his in-patient program, then failing to report to the probation office and for home detention and electronic monitoring; and then (2) absconding for two months (seemingly outside of the Western District of Pennsylvania). As a result this Court ordered him detained on May 21, 2009. See doc. no. 22. Again, during this entire period of time, defendant was represented by current trial counsel.

conversations.

According to the government, after defendant indicated he wanted to speak with an attorney, Detective Green stopped questioning him and made no attempt to further question him. However, Detective Green stayed with Mr. Vue while waiting for his scheduled initial appearance in federal court and, despite stating that he wanted an attorney, "Mr. Vue did not stop talking and proceeded to make remarks, among other things, about whether he possessed guns. In response to Mr. Vue's re-initiation of the conversation, Detective Green and ATF Special Agent David Farabaugh proceeded to discuss gun possession, among other things, with Mr. Vue." United States Response to Motion to Suppress Statements (doc. no. 62) at 3.

The Court will hear testimony on this issue and measure the admissibility of defendant's statements of February 13, 2009, by reference to, inter alia, *Edwards v. Arizona*, 451 U.S. 477 (1981) (where defendant had invoked his right to have counsel present during custodial interrogation, valid waiver of that right could not be established by showing only that he responded to police-initiated interrogation after being again advised of his rights); *Davis v. United States*, 512 U.S. 452, 458 (1994) (if suspect makes ambiguous or equivocal reference with regard to an attorney, cessation of questioning is not required but, rather, suspect must unambiguously request counsel); and *Berghuis v. Thompkins*, --- S.Ct. ---, 2010 WL 2160784 (2010) (fact that defendant was silent during first two hours and 45 minutes of three hour interrogation was insufficient to invoke his right to remain silent under Miranda; defendant implicitly waived his right to remain silent under Miranda by responding to question by interrogating officer; and police are not required to obtain an explicit waiver of defendant's right to remain silent under Miranda before commencing interrogation).

Regarding the other two statements, the Court will also need to hear testimony and make

5

factual findings and credibility determinations regarding the totality of the circumstances before making an informed decision on the motion to suppress.

For the foregoing reasons, the Court will grant defendant's motion to suppress in part, to the extent it requests an evidentiary hearing. Doc no. 52. Said hearing will be conducted on Wednesday, June 30, 2010 at 9:45 a.m.

**B. Motion to Suppress Evidence, or Schedule a *Franks* Hearing (doc. no. 51)**

Defendant filed a motion to suppress all evidence obtained pursuant to a search warrant issued to Detective Thomas Gault. Doc. no. 51. Defendant claims that statements contained in the detective's sworn affidavit of probable cause issued to obtain the search warrant "conflict with reality." *Id*. Specifically, defendant challenges the detective's statement where he claims that the confidential informant (CI) proved to be reliable "by providing information within the past several months that led to the arrest of four separate individuals and the seizure of drugs and a firearm." *Id*. The detective's affidavit then lists four pending criminal cases where the CI provided assistance. Defendant argues that the information in the court documentation (*i.e.* the criminal complaints) in these cases fail to reference the use of a CI, and thus, constitute misstatements by the detective. In response, the Government contends that defendant has failed to meet the threshold requirement to warrant a *Franks* hearing and therefore, one is not required. Doc. no. 61.

Defendant's suppression motion is predicated on the alleged invalidity of the search warrant which defendant claims was based on false information concerning the reliability of a CI, contained in the detective's affidavit of probable case. In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held:

There is, of course, a presumption of validity with respect to the affidavit supporting

6

the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. . . . [I]f these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

*Id.* at 171-172 (footnote omitted).

The United States Court of Appeals for the Third Circuit reiterated the *Franks* test as a two-part test requiring the defendant to "show *both* that bad faith or reckless disregard existed on the part of the affiant, *and* that there would have been no probable cause but for the incorrect statement." *United States v. Frost*, 999 F.2d 737, 743 (3d Cir. 1993) (emphasis in original). In *United States v. Yusef*, the Court of Appeals for the Third Circuit held that in order to get a *Franks* hearing, the defendant must make a "substantial preliminary showing" that the affidavit contained a false statement which was made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause. *Id.* 461 F.3d 374, 383 (3d Cir. 2006). A proponent of a *Franks* hearing must make a substantial preliminary showing in order to prevent the misuse of such hearings for purposes of discovery or obstruction.[5] *United States v. Marranca*, 98 Fed.Appx. 179, 182 (3d

---

[5] This Court notes that defense counsel filed a sealed Motion (doc. no. 64) setting forth the scope of the proposed *Franks* hearing from defense counsel's perspective. This Motion requested that seven fact witnesses appear and testify and bring documents with them. The witnesses would represent seven different city and county agencies and authorities and provide testimony and records covering a period of time since 1997 concerning Detective Gault. Given the broad scope of said Motion, and understanding that this Motion forms the scope of the requested *Franks* hearing, this Court finds that said Motion adds further reason to deny the Motion to Suppress or for a *Franks* Hearing (doc no. 51). To permit a *Franks* hearing under the scope suggested by defendant would allow defendant a wide and panoptic approach, and would constitute a misuse of a *Franks* hearing because it would be clearly used for purposes of

Cir. 2004) *citing*, *Franks*, 438 U.S. at 170-71.

With respect to the first prong of the *Franks* test, this same Court established standards for what constitutes "reckless disregard for the truth" as: (1) when an officer recklessly omits facts that any reasonable person would know that a judge would want to know; and (2) when an officer has obvious reasons to doubt the truth of what he or she is asserting. *Wilson v. Russo,* 212 F.3d 781, 783 (3d Cir. 2000). When assessing the second prong of the test concerning materiality, the Court in *Sherwood v. Mulvihill,* held that "[w]hen confronted with an affirmative misrepresentation in an affidavit submitted to procure a search warrant, a court must excise the false statement from the affidavit." *Id*. 113 F.3d 396, 400 (3d Cir. 1997). A defendant must make a substantial showing that probable cause does not exist under the revised affidavit; "to wit, the false statements were material to the original probable cause finding." *Id*.

Thus, under the facts of this case, in order to obtain a *Franks* hearing with the ultimate goal of suppressing the evidence obtained during a search of defendant's home, defendant must make a substantial showing that: (1) the detective recklessly omitted facts that a reasonable person would know that a judge would want to know, or (2) the detective had obvious reasons to doubt the truth of what he asserted. Because defendant has alleged that the detective made deliberate misstatements – not mere omissions – with respect to the reliability of CI, if this Court determines that defendant has made a substantial showing of a misrepresentation, then it must consider the affidavit devoid of the misstatements. If defendant can make a substantial showing that probable cause does not exist under this excised affidavit, then he may obtain a *Franks* hearing, because he will have shown that the false statements were material to the original probable cause finding.

---

discovery. For these reasons, this Court denies the sealed Motion filed at doc. no. 64.

Thus, this Court's first inquiry is to assess whether defendant has made a substantial showing that Detective Gault made misstatements. The particular section of the affidavit challenged by defendant reads as follows:

> The CI has proven reliable by providing information within the past several months that led to the arrest of four separate individuals and the seizure of drugs and a firearm. These cases are filed under OTN G427980-0, G427615-6, G413866-5, G412597-3 ... .

It is important to note that defendant does not claim that the detective fabricated the existence of the CI. Rather, defendant asserts that one of the four matters, OTN G427980-0, referenced by the detective in connection with the CI did not result in an arrest (doc. nos. 51 and 51-1, exhibit C) and the three other matters fail to mention a CI in the criminal complaints. Doc. nos. 51, 51-1, exhibits D-F.

In response to these allegations, the Government explained that OTN G427980-0 was "opened for administrative purposes in an investigation that involved the informant" and further stated that "[c]riminal charges were not ultimately prosecuted at that OTN number." Doc. no. 61, pp.15-16. Accordingly, it does not appear to this Court that the detective made a misstatement when he referenced OTN G427980-0 in his affidavit in connection with the CI.

Next, the Government explained that matters at OTN G427615-6 and G412597-3 "resulted in the filing of criminal complaints" as noted by defendant, "premised upon evidence independent of the [CI]." However, the "the [CI] was involved in those investigations" and "[w]as not referred to in the criminal complaints to avoid unnecessarily exposing or endangering him." Once again, the detective did not misstate the CI's contribution in the past when referencing these two OTN numbers. In fact, "... a prior history of tips that result in arrests and in the securing of information

and evidence can provide a sufficient basis for concluding that the information is reliable." *United States v. Marino*, 682 F.2d 449, 453 (3d Cir. 1982).

Finally, the Government admitted that the detective "mistakenly included" OTN G413866-5 in the affidavit. However, the Government notes that the detective erroneously included this number *instead of* a different OTN number pertaining to another investigation which occurred during the same period where the CI made a direct contribution. Given the fact that this was an inadvertent error, and because there was at least one additional investigation where the CI proffered assistance to the Government which is not mentioned in the affidavit, this Court does not believe defendant has made a substantial showing of a misstatement. Thus, this Court concludes that defendant has failed to substantially show that misstatements were made by the detective.

Further, regardless of any alleged misstatement by the detective which would then be excised from the affidavit, this Court still finds that probable cause existed and thus, no *Franks* hearing is warranted. As noted by the Government, the CI provided information within 48 hours of obtaining the information. The information provided by the CI after visiting the defendant's home included: (1) the CI had been inside the home of defendant and had observed a sawed-off shotgun while inside the home; (2) the CI saw other firearms while inside the home; (3) the CI knew defendant had been convicted of firearms violations in the past; (4) the CI knew that defendant had been in federal prison for making silencers ; (5) defendant bragged to the CI about making explosives; (6) the CI was told by defendant that he wanted to start a marijuana grow house; (7) the CI saw instruments used to grow marijuana inside the home; and (8) the CI was knowledgeable about firearms and controlled substances based on past use and/or possession. The detective was able to independently verify via surveillance that defendant entered and exited the place where the CI had made these observations

and had these conversations. The detective was also able to confirm that defendant had been convicted of federal firearms violation and was confined to a federal prison and, therefore, was not lawfully capable of possessing a firearm. Based on this information alone, this Court finds that there was probable cause for a search warrant. Accordingly, because defendant has failed to meet either prong of the *Franks* test, this Court will deny the Motion to Suppress Evidence or, in the Alternative, Hold a *Franks* Hearing. Doc. no. 51.

### C. Motion to Reveal Identity of Confidential Informant (doc. no. 53)

Next, the Court turns its attention to the Motion to Reveal the Identity of the Confidential Informant (doc no. 52), which is predicated in large part upon the allegations advanced by defendant in his *Franks* motion, discussed at length above. Defendant does not challenge the CI's reliability when it comes to recognizing a firearm; rather, defendant again contends that the alleged conflicts between the statements made by the detective in his affidavit about the CI's past reliability, and the documents for each of the four matters referenced by the detective in his affidavit, give rise to defendant's need to know the identity of the CI.[6] The Government contends that under the balancing test announced in *Rovario v. United States*, 353 U.S. 53, 59, revealing the CI's identity would be unwarranted, because the Government does not intend to have the CI testify at trial, nor would it inform the jury that a CI was part of the investigation. Doc. no. 61.

Simply put, defendant argues that the reliability of the CI is questionable and thus, counsel

---

[6] Defense counsel filed a motion to withdraw as counsel for defendant (doc. no. 56) claiming that the CI referenced in the detective's affidavit of probable cause was a former client of the Federal Public Defender's Office. Then, in its unauthorized reply brief to the Government's response to the motion to reveal the CI's identity, counsel for defendant notes that the Government "confirmed that one of its [CI]s is defense counsel's former client." Doc. no. 66, pp. 9-10. As a result, defendant's counsel now merely seeks "to confirm" the identity of the CI. *Id*. This revised request concerning the CI's identity will be denied for reasons discussed, *infra*.

for defendant argues that they need to be able to conduct an investigation of the CI in order to provide defendant with a full and adequate defense. However, since filing the motion to reveal the CI's identity, counsel for defendant admits knowing the identity of the CI . Doc no.66, p.10.

Now, defense counsel merely want confirmation of the CI's identity.[7] Applying the *Rovario* balancing test, this Court finds that such disclosure is unwarranted, especially given the knowledge defendant's counsel presently possesses in this regard. Therefore, the Court will deny the Motion to Reveal the Identity of the Confidential Informant. Doc. no. 53.

### D. Motion to Produce Evidence Pursuant to F.R.E. 404(b) and 609 (doc no. 50)

Defendant moves this Court to obtain a written list of any and all alleged prior bad acts or criminal convictions which the government intends to attempt to enter into evidence during its case-in-chief or as impeachment evidence on cross-examination (if defendant testifies), or any rebuttal evidence. Doc. no. 50. The Government's response (doc. no. 60) notes that this Court has previously ordered Government to disclose this material by July 6, 2010 (doc. no. 48), and further indicates it will comply with this prior Order of Court. Accordingly, the Court denies this motion (doc. no. 50) as premature, without prejudice to re-raise the matter should the Government fail to meet the July 6, 2010 deadline.

### E. Second Motion to Withdraw as Counsel (doc. no. 68)

Defense counsel has been counsel of record in this case for more than a year, since February 17, 2009. Doc no. 13.

As stated above, defense counsel filed nine (9) motions for extensions of time "to complete

---

[7] Defense counsel presented this information to the Court through their unauthorized reply brief (doc no 66) which this Court has reviewed and considered (along with defendant's unauthorized supplement to their *Franks* motion at doc no. 65) in rendering this Opinion.

the investigation of the facts and law." Only after the Court denied the ninth motion for an extension of time, and set the date for trial, did defense counsel file their [first] Motion to Withdraw as Counsel (doc no. 56) on June 16, 2010, alleging that the CI was a former client of the Federal Public Defender's Office.

The next day, June 17, 2010, in denying this first Motion without prejudice, this Court's Order indicated that counsel for the defendant could not merely withdraw; instead the Court ordered that the case be transferred to counsel who could maintain the trial schedule.[8] Immediately thereafter, on June 18, 2010, this Court then supplemented the June 17, 2010 Order noting that the Government had filed a response indicating that it would not call the CI as a witness, thereby rendering defense counsel's alleged conflict of interest between the CI and the defendant moot at that point in time. The supplemental Order also indicated that if this Court determined a *Franks* hearing was warranted, it would "revisit the issue and adjust the date for the *Franks* hearing to fit the schedule of substitute counsel" but would still require the pretrial and trial dates to remain in place. This Order, therefore, indicated the Court's willingness to again allow counsel for defendant to move to substitute counsel if a *Franks* hearing was necessary. Because this Court has now concluded that a *Franks* hearing is not necessary, the Court sees no need to substitute counsel for a defendant who

---

[8] As noted above, from June 25, 2009 through June 6, 2010, for a period of nearly a year, defense counsel filed nine (9) Motions for Extensions of time to File Pre-trial Motions. Doc. nos. 31, 33, 35, 37, 39, 41, and 43. All of the motions contained the following language: "Counsel needs additional time to complete the investigation of the facts and law before she can make an informed decision concerning the filing of pretrial motions." When defense counsel filed the ninth such motion, and in light of the passage of almost a year to conduct "the investigation of the facts and law" while defendant remained incarcerated, the Court denied the ninth motion and entered a Pretrial/Trial Scheduling Order (doc. no. 48) dated June 11, 2010, setting jury selection and trial date for July 26, 2010.

has been detained, awaiting trial, for over a year.

Again, in the Second Motion to Withdraw (doc. no. 68), defense counsel re-argues that the Federal Public Defender's Office has a conflict of interest. The Court denies said Motion, finding it without merit, but will permit additional counsel, not from the Federal Public Defender's Office, to enter an appearance, subject to the same requirements as set forth in the Supplemental Order that said additional counsel must be able to maintain the current trial schedule. This denial is without prejudice to further case developments.

**SO ORDERED** this 22nd day of June, 2010.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties