IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

      Plaintiff,                        Criminal No. 09-0048
                                             **ELECTRONICALLY FILED**

  v.

YOUA VUE,

      Defendant.

## MEMORANDUM ORDER DENYING
## DEFENDANT'S MOTION TO STAY PROCEEDINGS (DOC. NO. 75)

### I.  Summary of Decision

Based upon the facts of this case and the record, this Court held that the Federal Public Defender Office's prior representation of a confidential informant (*i.e.*, a former client), whom the government did not plan to call in its case-in-chief, did not pose an "actual conflict of interest" (using defense counsel's own words at doc. no. 68, p. 3, ¶7) under *United States v. Gambino*, 864 F.2d 1064 (3d Cir. 1988).  See Supplement to Memorandum Order (doc. no. 70), (doc. no. 71).  In light of the Court's Orders and its supplements to those Orders (doc. nos. 59, 70-71) denying defense counsel's Motions to Withdraw  (Doc. Nos. 56 and 68), the Federal Public Defender ("FPD" or "defense counsel") has now filed a Motion to Stay Proceedings (doc. no. 75), which this Court will deny for the following reasons.

**A.**      **Defense Counsel Relies Upon "Facts" that are Inconsistent with the Record**

First, nothing on the record indicates there would be any benefit to defendant, who has been incarcerated for over a year awaiting trial of this matter, were he to lose the fruits of the FPD's twelve-month "investigation of the facts and law," which is what would occur if the FPD was

permitted to abruptly withdraw from his case.[1]

Second, nothing on the record indicates that defendant desires new counsel or has consented to defense counsel's withdrawal on the eve of trial from his case. (Pretrial conferences are scheduled for July 15 and 20, 2010 with jury selection and the trial beginning on July 26, 2010.)

Third, nothing on the record indicates that defendant ever agreed to, or even knew about, the nine (9) Motions for Extensions of Time counsel filed in this case, extending his pretrial incarceration to over twelve months. See Doc. nos. 29, 31, 33, 35, 37, 39, 41, 43, and 46. Moreover, each of these motions were apparently a form motion to enlarge time, and stated only that the motion was unopposed by the government and, generically, proclaimed that counsel "needs additional time to complete the investigation of the facts and law before they can make an informed decision concerning the filing of pretrial motions." *Id.* at ¶ 3.

Fourth, nothing on the record indicates how, after twelve months of "investigation of the facts and the law," defense counsel suddenly "discovered" a purported conflict of interest, only after the ninth Motion for Extension of Time (doc. no. 46) was denied (doc. no. 47), and the pretrial and trial schedule was established by doc. no. 48 (dated June 11, 2010).

Fifth, this Court has always stated that if an actual conflict of interest was brought to the Court's attention or became apparent, the Court would consider a renewed Motion to Withdraw. See doc. nos. 59 and 70, p. 14 ("This denial is without prejudice to further case developments.").

---

[1] The FPD is now taking the position that it will not turn over the file materials of its twelve-month investigation to defendant's additional independent counsel (see doc. nos. 81, p. 4) which means that both the public (including the taxpayers) and defendant will lose the benefits of this year-long investigation.

**B.      Additional, Independent Counsel Has Been Appointed – Common Sense Approach**

Out of an abundance of caution, the Court has granted leave for additional counsel (independent and not from the Federal Public Defender's Office) to join the defense team.  See doc. no. 70, p. 14.  Said additional counsel has already entered an appearance, (see doc. nos. 72, 73, and 74), and is actively engaged in preparation. See doc. no. 81.

Nothing on the record indicates that additional counsel is incapable of conducting the independent inquiries necessary (including the eight (8) areas of inquiry/"duties" set forth at pages 6 and 7 of the Motion for Stay, doc. no. 75).

Nothing on the record indicates that it would not be in the best interest of defendant to be represented at trial by a defense team consisting of: (a) defense counsel ( FPD), which purports to have been investigating this case for twelve months, plus (b) additional, independent counsel who is already working on the defense and who, assuming the defense team follows proper protocol, is capable of independently handling any purported conflict with the former client in the event that becomes necessary.

This dual, yet independent, representation eliminates the FPD's "dilemma" of possibly being placed in the position of having to cross-examine its former client or being chilled in its investigation of the former client, because independent new counsel could do so based on his own investigation, even though it is hard to imagine a scenario where defense counsel would call the confidential informant in defendant's case-in-chief.

The Court considers this dual representation to be a common sense approach, balancing the private and public interests presented by the FPD's attempt to withdraw on the eve of trial after defendant has been in custody awaiting trial for over twelve months.

**C.**      **Public Interest Dictates the Denial of this Motion to Stay**

First, as stated above, the FPD defense team sought nine (9) Motions for Extensions of Time to investigate this relatively routine case – a one count indictment charging defendant with being a convicted felon in possession of a Model 500C, 20 gauge, Mossberg shotgun in violation of 18 U.S.C. § 922(g)(1) on one day in July, 2008. It is difficult to imagine why a twelve-month investigation would be necessary to defend such a charge.

Second, not only does defendant have a right to a speedy trial, so too does the public. See *Bloate v. United States*, 130 S.Ct. 1345, 1356 (2010) ("Speedy Trial Act . . . serves not only to protect defendants, but also to vindicate the public interest in the swift administration of justice. . . . [A] defendant may not opt out of the Act even if he believes it would be in his interest; '[a]llowing prospective waivers would seriously undermine the Act because there are many cases . . . in which the prosecution, the defense, and the court would all be happy to opt out of the Act, to the detriment of the public interest.'") (quoting *Zedner v. United States*, 547 U.S. 489, 502 (2006)).

Third, defense counsel (FPD) in this case also represented Marvin Hall who was sentenced by this Court last Friday, June 25, 2010, to the 24 months "time served" while he was in custody awaiting trial. See *United States v. Hall*, Criminal No. 08-0215 (doc. no. 133). The USSG range in that case was 15 to 21 months, with the likely sentence being 15 months based on all of the section 3553(a) factors, 18 U.S.C. § 3553(a), on the record in that case. Unfortunately for Mr. Hall, the FPD had filed 16 motions for extensions of time within which to file pretrial motions (see doc. nos. 28, 40, 45, 50, 55, 59, 65, 67, 71, 75, 79, 83, 85, 89, 94, and 98 ), <u>thus costing Mr. Hall at least nine additional and unnecessary months in prison</u>, with no discernible strategic or other benefit to him and nine months in additional prison costs assessed to the taxpayers.

For all of the above reasons, the Court finds that the granting of the requested stay (doc. no. 75) would be inconsistent with the public interest.

## II.  Background

### A.     Nature of the Charges

The Government brought this case against defendant, and charged him with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §922 (g). This firearm was seized by the authorities pursuant to a search warrant for defendant's home. The search warrant was issued to a detective based upon his affidavit of probable cause. The detective's affidavit included statements whereby he claimed to have obtained information about the presence of the firearm in defendant's residence from the observations of a proven reliable confidential informant within forty-eight hours of applying for the search warrant.

There is nothing on the record to support the assertion that defense counsel did not or could not have learned of the identity of the confidential informant until June 16, 2010.  See doc. No. 56, ¶6.  At defendant's arraignment on June 11, 2009, the lead attorney from the FPD's Office for defendant received a packet of discovery materials from the Government, including the police report regarding the search of defendant's residence and his arrest.  See doc. no. 28.  Attached to defendant's motion to suppress evidence obtained as a result of that search and arrest (doc. no. 51) were Detective Thomas Gault's police report regarding the application for the search warrant with his affidavit of probable cause submitted in support thereof.  Doc no. 51-1, pp. 2-10.  According to Detective Gault's affidavit, the confidential informant observed a sawed-off shotgun, among other things, in defendant's residence within 48 hours of the application for the search warrant on July 29,

2008.

Thus, as of June 11, 2009, the lead attorney from the FPD's Office knew or should have known that the confidential informant, who is now the heart of the FPD's two Motions to Withdraw, was in defendant's residence between July 27, and July 29, 2008. That information narrows the universe of persons who might be the confidential informant, and defendant presumably would have been able to suggest possible candidates to his attorneys over a year ago.

**B.      FPD's Representation**

The FPD formally undertook the representation of defendant on February 17, 2009.  Doc. no. 13.  According to defense counsel, at the inception of its representation of defendant, there were no known conflicts.  Doc. no. 56, ¶1.  Subsequent to undertaking defendant's representation, defendant was granted a pretrial release, but he absconded, was ultimately apprehended, his bond was revoked, and he was incarcerated to await trial of this matter.  Doc. nos. 9-12, 16-22.  From that point on, defense counsel filed nine motions to continue this case "to complete the investigation of the facts and law."  Doc. nos. 29, 31, 33, 35, 37, 39, 41, 43, and 46, all at ¶3.  This Court granted the first eight requests but on June 11, 2010, denied the ninth request and set jury selection and the trial date for July 26, 2010.  Doc. nos. 47-48.  Defendant remained incarcerated during his counsel's year-long investigation.

**C.      Defense Counsel's Nine Motions to Extend Time**

From the time defense counsel filed its first motion for an extension of time to conduct its investigation on June 25, 2009 (doc. no.  29), and in each of the eight subsequent motions for more time, including the final request filed on June 10, 2010, (doc. nos. 31, 33, 35, 37, 39, 41, 43, and 46), defense counsel never once averred that defendant had been apprised of the need for these

continuances.  Nor did the FPD ever indicate that it had received defendant's informed consent to delay his trial for a year while he remained incarcerated.

**D.      Defense Counsel's First Motion to Withdraw as Counsel for Defendant**

Defense counsel filed its first Motion to Withdraw as defense counsel on June 16, 2010. Doc. no. 56.  On June 17, 2010, this Court denied said Motion without prejudice.[2]    Doc. no. 59.

**E.      Court's Order Supplementing the Denial of Defense Counsel's First Motion to Withdraw**

On June 18, 2010, this Court supplemented the June 17, 2010 Order, noting that the Government had filed a response (doc. no. 57) indicating that it would not call the confidential informant as a witness, thereby rendering defense counsel's alleged conflict of interest between the confidential informant and defendant moot at that point in time. The Supplemental Order also indicated that if this Court determined a *Franks* hearing was warranted, it would "revisit the issue and adjust the date for the *Franks* hearing to fit the schedule of substitute counsel" but would still require the pretrial and trial dates to remain in place.[3]

---

[2] As noted above, from June 25, 2009 through June 6, 2010, for a period of nearly a year, defense counsel filed nine (9) Motions for Extensions of time to File Pre-trial Motions.  Doc. nos. 29, 31, 33, 35, 37, 39, 41, 43, and 46.  All of the motions contained the following language: "Counsel needs additional time to complete the investigation of the facts and law before they can make an informed decision concerning the filing of pretrial motions." When defense counsel filed the ninth such motion, and in light of the passage of almost a year to conduct "the investigation of the facts and law" while defendant remained incarcerated, the Court denied the ninth motion and entered a Pretrial/Trial Scheduling Order (doc. no. 48) dated June 11, 2010, setting jury selection and the trial date for July 26, 2010.

[3] Defense counsel sought a *Franks* hearing to explore whether the detective who prepared the affidavit of probable cause made misstatements as to his past use and reliance on the confidential informant/prior client of the Federal Public Defender's Office.

**F.      Defense Counsel's Second Motion to Withdraw**

On June 21, 2010, before this Court ruled upon defense counsel's request for a *Franks* hearing, defense counsel filed a Second Motion to Withdraw as defense counsel, indicating that "[defense] counsel is faced with an actual conflict of interest that requires withdrawal from the case, regardless of how the court rules on [defendant]'s request for [a] *Franks* hearing, notwithstanding the government's stated intention not to call the confidential informant in its case in chief." Doc. no. 68.   In its Second Motion to Withdraw, defense counsel claimed that in order to "provide competent legal representation to [defendant], defense counsel must independently investigate the confidential informant/former client who purportedly provided the government with key information against [defendant]." Doc. no. 68, p. 4.   In support of its Second Motion to Withdraw, defense counsel cited to *United States v. Gambino*, 864 F.2d 1064 (3d Cir. 1988), claiming that the facts present in this case created "an actual conflict of interest." Doc. no. 68, p. 8.

**G.      Court's Denial of Defense Counsel's Second Motion to Withdraw**

On June 22, 2010, this Court entered an Order addressing all of defendant's outstanding pretrial motions,[4] and also addressed defense counsel's Second Motion to Withdraw. Doc. no. 70. In the portion of its Order addressing the Second Motion to Withdraw, the Court denied defense counsel's request, but did permit the FPD to secure additional counsel for defendant.[5] Doc. no. 70,

---

[4] With respect to defendant's request for a *Franks* hearing, the Court concluded, *inter alia*, that the detective did not make any misstatements concerning his past use of, and reliance on, the confidential informant, and specifically held, "because defendant has failed to meet either prong of the *Franks* test, this Court will deny the Motion to Suppress Evidence or, in the Alternative, Hold a *Franks* Hearing." Doc. no. 70, p. 11.

[5] Additional counsel entered his appearance on June 25, 2010 (doc. no. 74), and began active representation of defendant (see doc. no. 81, p.1).

pp. 12-14. In addition, this Order further stated, "[t]his denial is <u>without prejudice</u> to further case developments." Doc. no. 70, p. 14 (emphasis added).

### H. Court's Supplemental Order Denying Defense Counsel's Second Motion to Withdraw

On June 23, 2010, the Court elaborated on its decision with respect to defense counsel's Second Motion to Withdraw by way of a Supplemental Order. See doc. no. 71. In this Supplemental Order, the Court discussed two cases referenced by defense counsel (*Gambino*, *supra*, and *United States v. Moscony*, 927 F2d 742 (3d Cir. 1991)), in support of the Second Motion to Withdraw. Doc. no. 71, p 3-6.

In sum, the Court specifically noted that in this case, unlike *Gambino*, *Moscony*, and other cases cited by defense counsel, the prosecution asserted that it would <u>not</u> call the confidential informant to testify. *Id*. The Court also noted that unlike *Moscony* where the defense attorney was simultaneously representing various individuals whose testimony could be used against one another, this case presented defense counsel with a dissimilar challenge. *Id*. Here, defense counsel claimed that in order to defend defendant in this matter, it needed to investigate its former client (*i.e.* the confidential informant), who defense counsel represented in a separate matter. *Id*. Defense counsel expressed concern about its inability to maintain its obligation of loyalty and confidentiality to the former client with respect to any past information the former client shared with the FPD during the prior case. *Id.* This Court disagreed, noting that defense counsel steadfastly refused to explain or otherwise describe how such an investigation would create "an actual conflict. " *Id*.

In addition to noting these critical distinctions from the case law relied upon by defense counsel, the Court's Supplemental Order also held that defense counsel utterly failed to meet, nor even make a proffer, as to the second prong of the two-prong test announced in *Gambino*. *Id*. To

this end, this Court succinctly held that defense counsel failed to proffer anything that would "establish" that its nearly year-old investigation of this matter and trial preparation had to immediately cease "due to the attorney's other loyalties or interests" to its former client, the confidential informant. Doc. no. 71, citing, *Gambino*, 864 F.2d at 1070. This Court further noted that defense counsel merely concluded in a summary fashion that investigating the former client (*i.e.* the confidential informant) would inherently conflict with its representation of defendant, and expressly stated in a footnote that they were under no obligation to say anything more. *Id*.

In sum, defense counsel's lack of compliance with the second prong of *Gambino*, combined with the fact that defendant had been incarcerated for nearly a year at the time defense counsel filed the ninth motion for an extension of time to investigate this matter and would be incarcerated for more than year before the start of trial, led this Court to deny defense counsel's Second Motion to Withdraw as Counsel, finding no legal or rational basis to do otherwise.

In response to this Court's denial of its Second Motion to Withdraw as Counsel, defense counsel has filed a Writ of Mandamus and asks this Court to stay the proceedings in this case.

## III. Analysis

In general, the power to temporarily stay proceedings lies within the informed, sound discretion of the district courts. *See Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.").

When deciding to grant or deny a motion for a stay, this Court is required to consider the following four factors:

(1) the likelihood that the petitioner will prevail on the merits of the appeal;

(2) whether there will be irreparable injury to the petitioner unless a stay is granted;

(3) whether there will be substantial harm to other interested parties; and

(4) the public interest.

*United States v. Fiumara*, 605 F.2d 116, 117 (3d Cir. 1979).

Turning now to the facts of this case, this Court carefully considers all of factors described in *Fiumara*.

### A.      The Likelihood that Defendant will Prevail on the Merits

Defense counsel must first demonstrate that it is likely to prevail on appeal of this Court's Orders denying its Motions to Withdraw as counsel for defendant.  The Court finds that its prior Orders denying defense counsel's two Motions to Withdraw are correct, and thus finds there is little likelihood that defendant will prevail on the merits.  This Court carefully reviewed each of defense counsel's Motions for Withdrawal (as well as this Motion for a Stay of the Proceedings), and with

each new filing has attempted to balance the competing interests presented.

As noted above, defense counsel filed its [First] Motion to Withdraw on June 16, 2010. Doc. no. 56. On June 17, 2010, this Court denied this first Motion without prejudice indicating that counsel for the defendant could not merely withdraw; instead, the Court ordered that the case be transferred to counsel who could maintain the trial schedule.[6] Doc. no. 59. Thus, this Court's first response was to provide defense counsel with an opportunity to locate substitute counsel. *Id.*

On June 18, 2010, this Court supplemented the June 17, 2010 Order, noting that the Government had filed a response (doc. no. 57) indicating that it would not call the confidential informant as a witness. Based on the Government's representation in this regard, this Court determined that defense counsel's alleged conflict of interest between the confidential informant and defendant was moot at that point in time. The Supplemental Order also indicated that if this Court determined a *Franks* hearing was warranted, it would "revisit the issue and adjust the date for the *Franks* hearing to fit the schedule of substitute counsel," but would still require the pretrial and trial dates to remain in place. This Order, therefore, indicated the Court's willingness to again allow counsel for defendant to move to substitute counsel if a *Franks* hearing was necessary.[7]

Before this Court ruled upon defense counsel's request for a *Franks* hearing, defense counsel filed its Second Motion to Withdraw as defense counsel indicating that it was "faced with an actual conflict of interest that requires withdrawal from the case, regardless of how the Court rules on

---

[6] On June 11, 2010 the Court had entered a Pretrial/Trial Scheduling Order (doc. no. 48) setting jury selection and the trial date for July 26, 2010.

[7] Defense counsel sought a *Franks* hearing to explore whether the detective who prepared the affidavit of probable cause made misstatements as to his past use and reliance on the confidential informant/prior client of the Federal Public Defender's Office.

[defendant]'s request for [a] *Franks* hearing, notwithstanding the government's stated intention not to call the confidential informant in its case in chief." Doc. no. 68. In its Second Motion to Withdraw, defense counsel claimed that in order to "provide competent legal representation to [defendant], defense counsel must independently investigate the confidential informant/former client who purportedly provided the government with key information against [defendant]." Doc. no. 68, p. 4. In support of its Second Motion to Withdraw, defense counsel cited to *United States v. Gambino*, 864 F.2d 1064 (3d Cir. 1988), claiming the facts present in this case created "an actual conflict of interest". Doc. no. 68, p. 8.

On June 22, 2010, this Court addressed all of defendant's outstanding pretrial motions in a singular Order, and also addressed defense counsel's Second Motion to Withdraw as defense counsel. In the portion of its Order addressing the Second Motion to Withdraw, the Court denied defense counsel's request finding it without merit, but permitted "additional counsel, not from the Federal Public Defender's Office, to enter an appearance, subject to the same requirements as set forth in the Supplemental Order that said additional counsel must be able to maintain the current trial schedule." Doc. no. 70, p. 14. In addition to permitting FPD to secure additional, independent counsel for defendant,[8] this Order further stated, "[t]his denial is <u>without prejudice</u> to further case developments." *Id.* (emphasis added).

On June 23, 2010, the Court elaborated on its decision with respect to defense counsel's Second Motion to Withdraw by way of a Supplemental Order. See doc. no. 71. In this Supplemental Order, the Court discussed two cases referenced by defense counsel (*Gambino*, *supra*, and *United*

---

[8] Additional counsel entered his appearance on June 25, 2010 (doc. no. 74), and immediately began working for defendant. See doc. no. 81.

*States v. Moscony*, 927 F2d 742 (3d Cir. 1991)), in support of its Second Motion to Withdraw. Doc.

no. 71, p 3-6. This Court specifically held:

> In order for the Federal Public Defender's Office to have an actual conflict
> of interest, as claimed in the Second Motion to Withdraw, defense counsel:
>
> > . . . must show two elements. First, he must demonstrate that some
> > plausible alternative defense strategy or tactic might have been
> > pursued. He need not show that the defense would necessarily have
> > been successful if it had been used, but that it possessed sufficient
> > substance to be a viable alternative. Second, he must establish that the
> > alternative defense was inherently in conflict with or not undertaken
> > due to the attorney's other loyalties or interests.
>
> *United States v. Gambino*, 864 F.2d 1064, 1070 (3d Cir. 1988) *citing*, *United States
> v. Fahey*, 769 F.2d 829, 836 (1st Cir. 1985).

As to the first prong of the two-part *Gambino* test, defense counsel suggests that an investigation of the confidential informant, its former client, is a defense strategy or tactic. Defense counsel further indicates that the investigation cannot be pursued because of its prior representation of the confidential informant. Specifically, defense counsel asserts that "to provide competent legal representation to [defendant], defense counsel must independently investigate the confidential informant/former client who purportedly provided the government with key information against [defendant]." Doc. No. 68, p 4. As to the second prong of the *Gambino* test, defense counsel suggests that "this plausible (and viable)" defense strategy "cannot be pursued because to do so would inherently conflict with other loyalties or interests." Doc. No. 68, p. 8.

Turning to the second prong of the *Gambino* test, defense counsel, as the petitioner in this matter, is required to "<u>establish</u>" that investigating the former client/confidential informant will inherently conflict with, or not be able to be undertaken, "due to the attorney's other loyalties or interests." *Gambino*, 864 F.2d at 1070 (emphasis added). Defense counsel has proffered nothing that would establish such a conflict, even though defense counsel's investigation is nearly a year old. To the contrary, defense counsel summarily concludes that investigating the former client (*i.e.* the confidential informant), inherently conflicts with its representation of defendant. In fact, defense counsel expresses, in a footnote, that they are under no obligation to say anything more. Doc. No. 68, p. 8, n. 3.

Under the facts of this case, this Court fails to see how investigating a former client can conflict with the defense of this defendant, who has been charged with one

count of possession of a firearm by a convicted felon. Defense counsel has simply not supplied any adequate basis to establish why it cannot conduct an investigation of its former client.

To be clear, this Court is not requesting that defense counsel breach its ethical obligation under Pa.R.Prof.Conduct 1.9 by using or divulging any confidential information that it possesses on behalf of its former client to his or her disadvantage (unless that information has become generally known). However, in light of the fact that the Government has attested that it will not call the confidential informant as a witness in this case, and considering that the Government usually moves for defense counsel's withdrawal if an actual – or even potential – conflict of interest exists, this Court is unpersuaded by defense counsel's argument and supporting case law that permitting withdrawal is in its incarcerated client's best interests.

By way of example, using one of the cases upon which defense counsel relies, in *United States v. Moscony*, 927 F2d 742 (3d Cir. 1991), the defendant was convicted of numerous offenses committed in the operation of his real estate business. The defendant's attorney had previously represented the defendant's employees. *Id*. at 747. The government planned to call the employees as witnesses at the defendant's trial. *Id*. The testimony of these employees was "central to the government's case," and the defendant's attorney found himself in a position where he could use the information obtained during his representation of the employees to cross-examine and possibly impeach them during the defendant's trial. *Id*. at 748, 750.

Unlike *Moscony* and as noted above, in this case, the government's counsel has attested that the confidential informant is not going to be called to testify. Doc. No. 57. Therefore, defense counsel will not be placed in the position of needing use any information it may presently possess with regard to its former client which could be used to attack his or her credibility on cross-examination, because s/he is not being called in the Government's case-in-chief.

In addition, defense counsel repeatedly notes that the confidential informant is a former client. This distinguishes this situation from the one present in *Moscony*, where the multiple representation by the attorney occurred simultaneously.

Moreover as noted in *Gambino*:

It seems clear that the existence of an actual conflict and adverse effects from it are more likely to be evident in cases in which an attorney takes positive steps on behalf of one client prejudicial to another than in cases in which the attorney's actions are based on inaction and are passive, as is charged here. Thus, if an attorney

> jointly represents in one trial two defendants claiming innocence, his conflict in arguing that one should be acquitted because the other is guilty is obvious. On the other hand, an attorney presenting a stronger defense for one client than another might well be free of conflict. Overall, conflicts problems are more likely to arise in cases involving joint representation in a single proceeding rather than multiple representation in which the attorney represents different clients in different matters, the situation here. *See United States v. Fahey*, 769 F.2d 829, 834 (1st Cir. 1985).

*Id.,* 864 F.2d at 1070.

Doc. no. 71, pp. 3-6.

In sum, defense counsel's failure to meet the *Gambino* test, combined with the fact that defendant had been incarcerated for a year when defense counsel filed its ninth motion for an extension of time to investigate this matter, led this Court to deny defense counsel's Second Motion to Withdraw as Counsel, finding no legal or rational basis to do otherwise.

Each time this Court issued an Order denying defense counsel's Motions to Withdraw, this Court indicated that the denial was <u>without prejudice</u> to refile upon further case developments. See, doc nos. 59 and 70. Furthermore, even after twice considering defense counsel's position and determining that no conflict existed, this Court's Order denying defense counsel's Second Motion to Withdraw (doc. no. 70) permitted the FPD to obtain additional counsel for defendant to: (1) assuage their concerns about a perceived conflict, while (2) enabling defendant to obtain conflict-free counsel, and (3) bringing the case to trial as previously ordered in light of the fact that defendant had already spent a year in prison.[9]

---

[9] In addition to the Court's position that it correctly decided defense counsel's two Motions to Withdraw, this Court notes it would be improvident to stay this matter to accommodate defense counsel's appeal of prior interlocutory orders. See *Fiumara*, supra at 118, citing *Abney v. United States*, 431 U.S. 651, 656-63 (1977) (setting forth three requirements a petitioner must meet for an immediate appeal of a collateral order). Under the facts presented

Therefore, this Court finds that it has twice correctly determined that defense counsel is not faced with "an actual conflict of interest" as the FPD purports; and given the fact that additional, independent counsel now co-represents defendant and can undertake the portion of defendant's defense strategy involving the FPD's former client (the confidential informant), defendant can finally proceed to trial without further delay and with no possibility of conflicted counsel.

**B.      Whether Irreparable Injury Will Befall Defendant Unless a Stay is Granted**

"Irreparable injury" has been defined in the context of preliminary injunctions where it is an essential prerequisite to a court's decision to grant relief.  See*, i.e., A. O. Smith Corp. v. FTC*, 530 F.2d 515, 525 (3d Cir.1976) (the feared injury or harm [must] be irreparable – not merely serious or substantial. The word means that which cannot be repaired, retrieved, put down again, atoned for); *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir.1989) (to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial); *Oburn v. Shapp*, 521 F.2d 142, 151 (3d Cir. 1975) (what may constitute irreparable harm in a particular case is, of course, dependent upon the particular circumstances of the case).

Defense counsel has claimed that "the interests of both [defendant] and the former client/informant will be irreparably and substantially harmed." Doc. no. 75, p. 9.  Defense counsel's sole proffer relating to irreparable harm which may befall defendant begins as follows: "Undersigned counsel has confidential information from its prior representation of the former client that is material to [defendant]'s case." *Id*.  Defense counsel further explains that, "if counsel's hands remain tied by

here, defense counsel has not met any of the three *Abney* requirements.

the conflict of interest, [defendant], who is in custody, will be without competent counsel. As [a] result, he will likely suffer a conviction, have to wait for appeal and, ultimately a new trial. Once this occurs, the harm cannot be undone: [defendant] cannot get back the time he will have stayed in jail." *Id*., pp. 9-10.

Despite defense counsel's failure to provide this Court with any detail concerning this key information that it obtained from its former client which can be used to defend its current client, this Court, in an abundance of caution, previously directed that independent, additional counsel be appointed. Doc. no. 70. Additional, independent counsel (CJA) has been appointed. Doc. no. 74. Thus, this Court has made it possible for additional counsel to prepare any portion of defendant's defense that the FPD believes it can not undertake without conflict, while still enabling the FPD to provide defendant and defendant's additional counsel with the fruits of its twelve-month investigation. Moreover, by allowing for additional counsel, this Court made it possible for defendant to finally proceed to trial after spending more than a year in prison, while enabling his attorneys to build an ethical wall between them (if necessary) so that all defense strategies could be vigorously pursued and presented.

In sum, this Court has provided defendant with the best of both worlds – defense counsel (FPD) which has had a year to investigate the law and facts of this matter, and additional counsel (CJA) who can zealously investigate the confidential informant and pursue any defense strategy that may be available to defendant based on the outcome of said investigation. As a result, not only does this Court not find that irreparable harm will result as this case proceeds to trial with defendant being represented by two separate counsel (the FPD and additional CJA counsel), this Court finds that in refusing to grant a stay it has properly balanced the competing interests of the defendant to conflict-

free counsel and a speedy trial, especially considering that his own defense counsel (FPD) has already caused him to spend over a year in prison while it investigated this matter.

**C.    Whether There Will be Substantial Harm to Other Interested Parties**

Defense counsel claims the other interested party who will be harmed if a stay is not granted is the confidential informant. For the same reasons set forth immediately above, the Court discounts this argument. The investigation of defense counsel's former client which can now be conducted by defendant's additional counsel negates any possible risk of defense counsel "divulging the confidences of [its] former client" and/or any "betray[al] of loyalty" to its former client. Doc. no. 75, p. 9.

**D.    The Public Interest**

In denying defense counsel's Motions to Withdraw, without prejudice to reconsider the matter in the event an actual and irreconcilable conflict of interests develops on the record, and by appointing additional, independent counsel to represent defendant in order to prepare for and deal with that possibility if it happens, this Court has endeavored to balance several competing interests. Defendant's interests are paramount, of course, and the problem here implicates two fundamentally important rights – his right to a speedy trial, in light of the numerous extensions of time granted for counsel to complete its investigation, and his Sixth Amendment right to conflict-free counsel.

In addition, this Court must also consider and balance the public's interest in speedy prosecutions of indictments. As the United States Supreme Court stated in *Bloate v. United States*, the Speedy Trial Act serves to protect defendants and to "vindicate the public interest in the swift administration of justice." 130 S.Ct. 1345, 1356 (2010). Accordingly, a "defendant may not opt out of the Act even if he believes it would be in his interest; '[a]llowing prospective waivers would

seriously undermine the Act because there are many cases . . . in which the prosecution, the defense, and the court would all be happy to opt out of the Act, to the detriment of the public interest.'" *Id.*, (quoting *Zedner v. United States*, 547 U.S. 489, 502 (2006)).

In this regard, the Court is increasingly concerned about repeated delays caused by *pro forma* defense motions to enlarge time to file pretrial motions to complete investigation of the law and facts, which until recently, this Court (and others in this district) has been quite willing to grant based upon counsels' representations taken at face value.

However, as in this case, such repeated delays cause problems for the Court and, more importantly, for the innocent-until-proven-guilty defendants and the public. To put an even finer point on it, this Court's recent experience in *United States v. Hall*, Criminal No. 08-0215, is illustrative of the problem.

The lead Assistant Federal Public Defender in this case also represented Marvin Hall, who was sentenced by this Court on Friday, June 25, 2010 to 24 months "time served" in pretrial detention. See *United States v. Hall*, Criminal No. 08-0215, doc. no. 133. The undisputed USSG range for Mr. Hall was determined to be 15 to 21 months, and considering all of the section 3553(a) factors, 18 U.S.C. § 3553(a), his sentence would undoubtedly have been at or below the 15-month, low end of the guidelines.

However, Mr. Hall's attorney filed, and this Court granted, sixteen (16) motions for extensions of time within which to file pretrial motions (see doc. nos. 28, 40, 45, 50, 55, 59, 65, 67, 71, 75, 79, 83, 85, 89, 94, and 98 ).[10] As a result, Mr. Hall was in custody <u>at least nine months more</u>

_____

[10] Most of which were so that counsel could "complete the investigation of the facts and the law."

than he ought to have been (even at the high end, he would have been in custody at least three additional months), with no discernible strategic or other benefit to him, and at additional expense to the public taxpayers.

Turning to this case, this Court granted eight *pro forma* motions to enlarge the time to file pretrial motions before denying the ninth. Counsel for the Government notes, in its opposition to the motion to stay (doc. no. 80, p. 1) its belief that defendant has "relatively limited sentencing exposure,"[11] and that if a stay were to be granted upon defense counsel's motion, then defendant and the public might be presented with a situation where the defendant spends more time than he would have had he gone to trial and been convicted or plead guilty many enlargements of time ago. Obviously, the detriment to defendant would be *greatly* magnified if, in fact, he were to be acquitted at trial.

Moreover, given the fact that this Court has appointed additional counsel to serve defendant in this case in order to cure the vaguely articulated conflict of interest the FPD perceives, this Court finds that the public's and defendant's interests in a speedy trial, represented by competent counsel, substantially outweighs any harm to defendant from the perceived, but unspecified, conflict of interests as it has been presented to the Court.

### IV. Conclusion

Based on the foregoing law and authority defendant's Motion to Stay the Proceedings (doc. no. 75) is denied. An appropriate Order follows.

---

[11] Like Mr. Hall, Mr. Vue is charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).