IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

YOUA VUE,

        Defendant.

Criminal No. 09-0048
**ELECTRONICALLY FILED**

### MEMORANDUM OPINION RE: TEXT ONLY ORDER DATED JULY 15, 2010 STRIKING "NOTICE OF CLARIFICATIONS AND CORRECTIONS TO THE RECORD"

**I.    Introduction**

At 9:38 a.m. on the morning of July 15, 2010, the day scheduled for a 10:00 a.m. change of plea hearing for defendant Youa Vue, the lead Assistant Federal Public Defender for Mr. Vue filed a document entitled "Notice of Clarifications and Corrections to the Record." Doc. No. 93. At 11:10 a.m. that same day, this Court entered a Text Only Order striking Doc. No. 93 "for failure to cite any rule or law permitting the filing" of such a Notice purporting to correct or clarify the record, and noting that if counsel objected to the Memorandum Order, Doc. No. 87, Denying Defendant's Motion to Stay Proceedings, the proper procedure would have been an appeal to the United States Court of Appeals for the Third Circuit. ECF Docket, July 15, 2010. The Court also advised counsel in open court that it would entertain a *motion* to clarify or correct the record and requested counsel to provide legal authority in the rules of procedure or elsewhere for such motion. To date, no such motion has been filed.

This Memorandum Opinion is in further explanation of the July 15th Text Only Order.

The Federal Public Defender's ("FPD's") document entitled "Notice of Clarifications and Corrections to the Record" ("FPD Notice") is in fact neither a *clarification* nor a *correction* to the record in Mr. Vue's case. Rather, the FPD Notice consists of (i) the unverified statements of counsel, with no supporting affidavits, about extraneous matters regarding the FPD's representation of Mr. Vue that did not occur in open court and were *not* part of this record,[1] Doc. No. 93 at 1-3; and (ii) statements regarding the guilty plea and sentencing in an unrelated case (about facts on and extraneous to the record in that case) that this Court referenced in its Memorandum Order, Doc. No. 87, denying Defendant's Motion to Stay Proceedings at Doc. No. 75, Doc. No. 93, at 3-14, with two transcripts attached from the record in that other case. The Court's reference to *United States v. Marvin Hall*, Criminal Action No. 08-215, Doc. No. 87, at 4, 20-21, in support of not granting the FPD's motions to withdraw from the case and further delay Mr. Vue's trial, was to illustrate the serious speedy trial and due process problems caused by the Court's granting this AFPD's numerous motions for enlargement of time to file pretrial motions, Doc. No. 93, at 3-14, and the detriment that can befall defendants where those repeated continuances result in serving more time imprisoned than the term of imprisonment calculated under the advisory guidelines.

Because the FPD Notice is *neither* a correction *nor* a clarification of the record *in Mr. Vue's case*, it has no bearing on Mr. Vue's guilty plea or sentencing, but that was not immediately apparent. By not filing the document as a Motion, the AFPD did not provide the government the opportunity to respond or this Court the opportunity to consider the matter and

---

[1] The Court has no reason to doubt the accuracy of the FPD's statements with regard to its representation of Mr. Vue and accepts them as true and made in good faith. Nevertheless, they are self-serving statements about extraneous matters.

make an informed decision. Moreover, the last minute filing (some 22 minutes before the change of plea hearing commenced) set forth nothing relevant or material to Mr. Vue's change of plea, and in fact, Mr. Vue had not authorized or been consulted with respect to this document and had not seen it until he arrived in court for the change of plea hearing. The Court recessed the hearing until the afternoon to give Mr. Vue the opportunity to review the document and discuss it with additional appointed counsel to determine whether it had any impact on his decision to change his plea to guilty. Ultimately, defendant and additional counsel determined it did not impact his decision.

Given that the FPD Notice pertains primarily to matters on and extraneous to the record in the *Hall* case, given that the FPD announced its intention to seek a writ of mandamus in the United States Court of Appeals for the Third Circuit to stay these proceedings pending the Court of Appeals' resolution of its mandamus challenge to this Court's orders denying permission to withdraw from the case,[2] and given that the FPD has appeared in this Court twice represented by

---

[2] Had this Court granted the FPD's motion to stay the proceedings, Mr. Vue's case would have been further delayed for many months pending the Court of Appeals' consideration of the FPD's appeal of four orders related to its motions to withdraw as counsel, as well as the mandamus action the FPD informed this Court it was going to file.

Shortly thereafter, however, defense counsel dramatically changed its tactics, and instead of filing the announced writ of mandamus to the Court of Appeals, notified the Court that Mr. Vue wished to enter a plea of guilty and, if possible, be sentenced *immediately* because, as in Mr. Hall's case, it is quite likely that Mr. Vue's guideline sentencing range of imprisonment will recommend less imprisonment than the time he has already served in pretrial detention. Given Mr. Vue's troubling criminal history and the circumstances surrounding his arrest, the Court was uncomfortable in allowing Mr. Vue to waive the presentence report and be immediately sentenced, but the Court has attempted to expedite the Probation Office's PSR process.

independent counsel,[3] see Docs. Nos. 85, 86 and 99, it seems fair to conclude that the FPD's Notice of Clarifications and Corrections to the Record is not intended to clarify or correct the record in Mr. Vue's case.

**II.     Background**

On June 22, 2010, this Court issued a Memorandum Order, Doc. No. 70, which, *inter alia*, denied two motions by the Federal Public Defender to withdraw its representation of defendant Youa Vue based on a recently discovered[4] potential conflict of interests. On those issues, this Court stated:

> E. Second Motion to Withdraw as Counsel (doc. no. 68)
>
> Defense counsel has been counsel of record in this case for more than a year, since February 17, 2009. Doc no. 13.
>
> As stated above, defense counsel filed nine (9) motions for extensions of time "to complete the investigation of the facts and law." Only after the Court denied the ninth motion for an extension of time, and set the date for trial, did defense counsel file their [first] Motion to Withdraw as Counsel (doc no. 56) on June 16, 2010, alleging that the CI was a former client of the Federal Public Defender's Office.
>
> The next day, June 17, 2010, in denying this first Motion without prejudice, this Court's Order indicated that counsel for the defendant could not merely withdraw; instead the Court ordered that the case be transferred to counsel who could maintain the trial schedule. Immediately thereafter, on June 18, 2010,

---

[3] An experienced and well respected attorney who is held in high regard by the bench and the bar in the Western District of Pennsylvania, including by this Court.

[4] The conflict of interests regarding a confidential informant, which the FPD discovered only after this Court denied its last motion to enlarge the time to file pretrial motions, was reasonably discoverable from the police reports and affidavits of probable cause received in the government's Rule 16 disclosures on June 11, 2009, Doc. No. 28. The Rule 16 disclosures indicated that the CI in question had been in Mr. Vue's residence within 48 hours of the application for a search warrant and which detailed a substantial amount of information the CI obtained from Mr. Vue at that time.

4

this Court then supplemented the June 17, 2010 Order noting that the Government had filed a response indicating that it would not call the CI as a witness, thereby rendering defense counsel's alleged conflict of interest between the CI and the defendant moot at that point in time. The supplemental Order also indicated that if this Court determined a *Franks* hearing was warranted, it would "revisit the issue and adjust the date for the *Franks* hearing to fit the schedule of substitute counsel" but would still require the pretrial and trial dates to remain in place. This Order, therefore, indicated the Court's willingness to again allow counsel for Defendant to move to substitute counsel if a *Franks* hearing was necessary. Because this Court has now concluded that a *Franks* hearing is not necessary, the Court sees no need to substitute counsel for a defendant who has been detained, awaiting trial, for over a year.

Again, in the Second Motion to Withdraw (doc. no. 68), defense counsel re-argues that the Federal Public Defender's Office has a conflict of interest. The Court denies said Motion, finding it without merit, but will permit additional counsel, not from the Federal Public Defender's Office, to enter an appearance, subject to the same requirements as set forth in the Supplemental Order that said additional counsel must be able to maintain the current trial schedule. This denial is without prejudice to further case developments.

Memorandum Opinion (Doc. No. 70), at 12-14.

On June 23, 2010, the Court elaborated on its decision with respect to the FPD's Second Motion to Withdraw by way of a Supplemental Order. (Doc. No. 71). In this Supplemental Order, the Court discussed two cases relied upon by the FPD, *United States v. Gambino*, 864 F.2d 1064 (3d Cir. 1988), and *United States v. Moscony*, 927 F2d 742 (3d Cir. 1991), in support of the Second Motion to Withdraw. (Doc. No. 71) at 3-6.

In sum, the Court specifically noted that in this case, unlike *Gambino*, *Moscony*, and the other cases cited by the FPD, the prosecution represented to the Court that it would <u>not</u> call the confidential informant to testify. *Id*. The Court also noted that, unlike *Moscony* where the defense attorney was simultaneously representing various individuals whose testimony could be used against one another, the perceived conflict in this case was dissimilar. *Id*. Here, the FPD

claimed that in order to defend defendant in this matter, it needed to investigate its former client (*i.e.* the confidential informant), who the FPD had represented in a separate matter. *Id*. Defense counsel expressed concern about its inability to maintain its obligation of loyalty and confidentiality to the former client with respect to any past information the former client shared with the FPD during the prior case. *Id.* This Court was not convinced, noting that defense counsel steadfastly refused to explain or otherwise describe how such an investigation would create "an actual conflict," especially since there was no *Franks* hearing and the government had no intention of calling the CI as witness. *Id*.

The Court's Supplemental Order also found that defense counsel failed to meet – or even make a proffer regarding – the second prong of the two-prong test announced in *Gambino*. *Id*. To this end, this Court found that the FPD had failed to proffer anything that would "establish" that its nearly year-old investigation of this matter and trial preparation had to immediately cease "due to the attorney's other loyalties or interests" to its former client, the confidential informant. Doc. No. 71, citing *Gambino*, 864 F.2d at 1070. This Court further noted that defense counsel merely concluded, in summary fashion, that investigating the former client (*i.e.* the confidential informant) would inherently conflict with its representation of defendant, and expressly declared in a footnote that counsel was under no obligation to say anything more. *Id*.

In light of the FPD's lack of compliance with the second prong of *Gambino*, combined with the fact that defendant had been incarcerated for nearly a year at the time defense counsel filed the ninth motion for an extension of time to investigate this matter and would be incarcerated for more than year before the start of trial, this Court denied the FPD's Second Motion to Withdraw as Counsel, finding no legal or rational basis to do otherwise.

Thereafter, on June 26, 2010, the FPD filed a Motion to Stay Proceedings, Doc. No. 75, "pending the filing of an expedited Petition for Writ of Mandamus . . . . to seek review of the orders denying the various motions to withdraw, in the Court of Appeals for the Third Circuit . . . ." *Id*. at 1, 2. The Motion to Stay does not purport to have been filed "on behalf of" Mr. Vue, nor does it indicate that he requested the FPD to seek such further delay or that he consented to filing the motion to stay his proceedings.

This Court denied the motion to stay, as discussed below, and the FPD has not appealed that denial, nor has it followed through on its announced intention to file a writ of mandamus, which would have been the proper procedure. Instead, the FPD challenges this Court's reasoning in denying the motion to stay, in particular, the references to Mr. Hall's situation, by way of the unauthorized position statement entitled a Notice of Clarifications and Corrections to the Record.

**Memorandum Order, Doc. No. 87, Denying Defendant's Motion to Stay Proceedings at Doc. No. 75**

When deciding to grant or deny a motion for a stay, this Court considers the following four factors: (1) the likelihood that the petitioner will prevail on the merits of the appeal; (2) whether there will be irreparable injury to the petitioner unless a stay is granted; (3) whether there will be substantial harm to other interested parties; and (4) the public interest. *United States v. Fiumara*, 605 F.2d 116, 117 (3d Cir. 1979). In its Memorandum Order of June 30, 2010 (Doc. No. 87), this Court denied the FPD's motion to stay the proceedings after analyzing the four factors, including the public interest in speedy trials. Doc. No. 87, at 19-21. Part of that discussion included the following references to *United States v. Marvin Hall*:

> In this regard, the Court is increasingly concerned about repeated delays caused by pro forma defense motions to enlarge time to file pretrial motions to

7

> complete investigation of the law and facts, which until recently, this Court (and others in this district) has been quite willing to grant based upon counsels' representations taken at face value.
>
> However, as in this case, such repeated delays cause problems for the Court and, more importantly, for the innocent-until-proven-guilty defendants and the public. To put an even finer point on it, this Court's recent experience in *United States v. Hall*, Criminal No. 08-0215, is illustrative of the problem.
>
> The lead Assistant Federal Public Defender in this case also represented Marvin Hall, who was sentenced by this Court on Friday, June 25, 2010 to 24 months "time served" in pretrial detention. See *United States v. Hall*, Criminal No. 08-0215, doc. no. 133. The undisputed USSG range for Mr. Hall was determined to be 15 to 21 months, and considering all of the section 3553(a) factors, 18 U.S.C. § 3553(a), his sentence would undoubtedly have been at or below the 15-month, low end of the guidelines.
>
> However, Mr. Hall's attorney filed, and this Court granted, sixteen (16) motions for extensions of time within which to file pretrial motions (see doc. nos. 28, 40, 45, 50, 55, 59, 65, 67, 71, 75, 79, 83, 85, 89, 94, and 98 ). As a result, Mr. Hall was in custody at least nine months more than he ought to have been (even at the high end, he would have been in custody at least three additional months), with no discernible strategic or other benefit to him, and at additional expense to the public taxpayers.
>
> Turning to this case, this Court granted eight pro forma motions to enlarge the time to file pretrial motions before denying the ninth. Counsel for the Government notes, in its opposition to the motion to stay (doc. no. 80, p. 1) its belief that defendant has "relatively limited sentencing exposure," and that if a stay were to be granted upon defense counsel's motion, then defendant and the public might be presented with a situation where the defendant spends more time than he would have had he gone to trial and been convicted or plead guilty many enlargements of time ago. Obviously, the detriment to defendant would be greatly magnified if, in fact, he were to be acquitted at trial.

Doc. No. 87, at 20-21.

The foregoing quotation is the ostensible reason necessitating the FPD Notice in this case. It consists of this Court's observation of the speedy trial problems caused by the recurring practice of numerous continuances for non-specific reasons, and illustrated by references to Mr.

Hall's case. The FPD Notice sets forth the FPD's *difference of opinion* and its *argument* as to why this Court's analysis of Mr. Hall's situation is wrong.

The FPD, like all counsel before this or any Court, is expected to vigorously defend its clients and is entitled to its opinions and may make any arguments it deems appropriate (within bounds of professionalism and rules of procedure and professional conduct, of course), but the FPD's opinions and arguments are not facts of record, notwithstanding that they are placed in a document called "Notice of Clarifications and Corrections to the Record." *That* is why the Court struck the FPD Notice from the record in this case.

If the FPD office in its professional opinion believes that the Court's Memorandum Order Denying Defendant's Motion to Stay Proceedings is erroneous, it should follow the proper procedure and file an appeal or seek a writ of mandamus as previously announced, not an unauthorized statement of fact purporting to "correct" or "clarify" the record.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc: all ECF registered counsel